[Cite as *Oxford Oil Co. v. West*, 2016-Ohio-5684.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THE OXFORD OIL COMPANY, N.K.A. ECLIPSE RESOURCES-OHIO, LLC | ) ) ) | |
| PLAINTIFFS-APPELLANTS | ) ) | CASE NO. 13 BE 0031 |
| VS. | ) ) | OPINION |
| BARRY M. WEST, et al. | ) ) ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 11 CV 435

JUDGMENT:      Reversed and Remanded.

APPEARANCES:

**For Plaintiffs-Appellants:**
Attorney David E. Northrop
Attorney Clay K. Keller
Babst Calland Clements and Zomnir, PC
One Cascade Plaza, Suite 1010
Akron, Ohio 44308

Attorney John K. Keller
Attorney John J. Kulewicz
Attorney Timothy B. McGranor
Vorys, Sater, Seymour & Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

Attorney William J. Taylor
Attorney Scott D. Eickelberger
Kincaid, Taylor & Geyer
50 North Fourth Street
P.O. Box 1030
Zanesville, Ohio 43701-1030

**For Defendant-Appellee:**
Attorney John A. Vavra
Attorney Joseph A. Vavra
Vavra Law Office
132 West Main Street
St. Clairsville, Ohio 43950

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: September 6, 2016

DeGENARO, J.

**{¶1}** Plaintiff-Appellant, The Oxford Oil Company, now known as Eclipse Resources-Ohio, LLC (Oxford Oil), appeals the trial court judgment invalidating an oil and gas lease with Defendants-Appellees Barry M. West, Stacey L. West, Brian K. West, and Shelly West, asserting the trial court erred by concluding the Lease was a no-term, perpetual lease that is void ab initio as against public policy.

**{¶2}** Pursuant to the Ohio Supreme Court's recent decision in *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals,* 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, the Lease is not perpetual; rather, it has a primary term of a definite duration of five years—which allows for the payment of delay rental payments only during the primary term—followed by a secondary term that extends the Lease if certain conditions are met. Accordingly the judgment of the trial court is reversed, and the matter remanded for further proceedings consistent with this opinion.

### Facts and Procedural History

**{¶3}** The Wests own a 97-acre parcel and entered into an oil and gas lease with Oxford Oil in October 2006. The Lease has a habendum clause that provides a primary term of five years, and a secondary term of indefinite duration that follows the expiration of the primary term, to continue under terms defined in that clause. The Lease also contains a delay rental provision, which gives Oxford Oil the option to defer commencement for successive twelve-month periods by paying annual delay rentals. The Lease goes on to expressly disclaim implied covenants.

**{¶4}** The Wests accepted all delay rental payments from Oxford Oil. While the Lease still had approximately four months remaining in its primary term, Oxford Oil attempted to enter the premises to commence operations for a well. However, the Wests notified Oxford Oil that they would not allow access.

**{¶5}** Just before the primary term was set to expire, Oxford Oil filed a complaint seeking the following relief: 1) an order requiring the Wests to comply with the Lease by allowing Oxford Oil to enter the property to extract oil and gas; 2) a declaration that the Lease is enforceable, valid and binding; and 3) an extension of

the Lease term due to the Wests' refusal to allow access. The Wests filed an answer and counterclaims asserting: 1) defective execution; 2) abandonment; 3) fraud; 4) bad faith; 5) breach of implied duty to develop mineral rights; 6) prohibition of assignment; 7) the Lease was void ab initio as a lease in perpetuity and contrary to public policy; and 8) quiet title. Discovery commenced, depositions WERE taken and filed.

**{¶6}** The parties filed and opposed reciprocal summary judgment motions on a variety of their respective claims. The trial court disposed of both motions on a limited basis, granting the Wests partial summary judgment, reasoning that the Lease was perpetual and thus void ab initio. The trial court entered judgment, finding no just reason for delay pursuant to Civ.R. 54(B), Oxford Oil appealed and the trial court stayed its judgment pending appeal.

**{¶7}** While this appeal was pending, this court held that another lease with substantially similar language was not a perpetual lease and thus valid in *Hupp v. Beck Energy Corp.*, 2014-Ohio-4255, 20 N.E.3d 732 (7th Dist.) That case was accepted for review by the Ohio Supreme Court; thus we stayed resolution of this case. *Hupp* was consolidated with another related case and on January 26, 2016, the Ohio Supreme Court, inter alia, affirmed this court's decision in *Hupp*, concluding the subject leases were valid—not void as against public policy. *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals,* 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836. The parties thereafter filed supplemental briefs addressing the impact of *Claugus* upon this appeal.

### Perpetual versus Term Lease

**{¶8}** Oxford Oil's first, second, fourth, fifth, and seventh assignments of error raise interrelated issues and will be discussed together for clarity of analysis:

> The Common Pleas Court erred by ruling that the oil and gas lease between the parties is a "no term" lease.

> The Common Pleas Court erred by declaring that an oil and gas lease with a secondary term of indefinite duration is a "no term" lease in

perpetuity.

The Common Pleas Court erred by declaring that an oil and gas lease with a secondary term of indefinite duration is void ab initio as contrary to public policy.

The Common Pleas Court erred by declaring all oil and gas leases with similar clauses void ab initio.

The Common Pleas Court erred by granting summary judgment for the defendants.

{¶9}  In its related third assignment of error, Oxford Oil asserts:

The Common Pleas Court erred by holding that an oil and gas lease in perpetuity is void ab initio as a matter of law.

{¶10}  A trial court's summary judgment is subject to de novo review. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826, 829, 586 N.E.2d 1121 (9th Dist.1990). Summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law.  Civ.R. 56. Further, "[t]he construction of written contracts and instruments of conveyance is a matter of law." *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996), quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus

{¶11}  Oxford Oil contends partial summary judgment in favor of the Wests on their counterclaim must be reversed as the Lease had a defined primary term that had not yet expired, as well as a secondary term. The trial court based its decision that the Lease here was perpetual in duration, and thus void ab initio as against public policy, upon the Monroe County Common Pleas Court decision in *Hupp v. Beck Energy* that invalidated a similar oil and gas lease, termed the Form G & T 83

lease, for the same reasons. However, we reversed the trial court in *Hupp* and that decision was affirmed by the Ohio Supreme Court in *Claugus*, *supra*.

**{¶12}** In *Claugus*, the landowners argued that the inclusion of the delay-rental provision and the phrases "in the judgment of the Lessee" and "capable of being produced" rendered the lease perpetual and void ab initio as against Ohio's public policy. *Id.* at ¶ 19.

**{¶13}** The Ohio Supreme Court rejected these arguments, holding that the delay-rental provisions only applied during the primary term of the lease and could not be used by the lessee beyond that fixed primary term. *Id.* at ¶ 20-21, 24-25. The Court further held that the phrases "capable of being produced" and "in the judgment of the Lessee" in the habendum clause of the lease did not render the lease perpetual, because these phrases only applied to an existing well drilled on the lease and could not be used by the lessee to unilaterally extend the lease without actual development. *Id.* at ¶ 24, 27-28. Accordingly, the Court held that the G & T 83 lease was valid and enforceable. *Id.* at ¶ 30.

**{¶14}** Thus, we must determine whether the language in this Lease is similar enough to the lease in *Claugus* such that the holding controls the resolution of this case.

**{¶15}** The habendum and delay rental clauses in *Claugus* stated respectively:

2. This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for a term of ten years and so much longer thereafter as oil and gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee, or as the premises shall be operated by the Lessee in the search for oil or gas and as provided in paragraph 7 following.

3. This lease, however, shall become null and void and all rights of either party hereunder shall cease and terminate unless, within _____ months from the date hereof, a well shall be commenced on the premises, or unless the Lessee shall thereafter pay a delay rental of

_____ Dollars each year, payments to be made quarterly until the commencement of a well. A well shall be deemed commenced when preparations for drilling have been commenced.

*Claugus* at ¶ 23.

**{¶16}** Here, the habendum and delay rental clauses provide respectively:

All of the above described [oil and gas] rights shall extend for a term of FIVE (5) years and so much longer as oil, gas or their constituents are produced or are capable of being produced in paying quantities (in the sole opinion of Lessee) or as long as gas is stored or gas, air, brine or any other substance is injected as provided herein or operations and/or transportation is maintained on all or any part of the [Leased premises].

Lessee shall commence operations for a well on the premises by December 25, 2006, or pay Lessor delay rental of FOUR HUNDRED EIGHTY FIVE dollars ($485.00) each year, payable annually in advance. The first annual payment shall be due on December 25, 2006 and shall give the Lessee the privilege of deferring the commencement of a well for TWELVE (12) months following the due date. * * * [T]he commencement of a well may be further deferred for periods of the same number of months successively during the term of the lease. * * *

**{¶17}** The Lease herein is substantially similar to the *Claugus* lease validated by the Ohio Supreme Court. In fact, the delay rental provision language in the Lease more clearly contradicts a perpetual interpretation insofar as it explicitly states that the delay-rental clause only applies "during the *term* of the lease." (Emphasis added.) In *Claugus*, the delay rental provision was not as clear, thus the Court relied on case law interpreting delay-rental provisions to apply only during the primary term of a lease. *Claugus* at ¶ 25, citing *Brown v. Fowler*, 65 Ohio St. 507, 63 N.E. 76 (1902); and *Jacobs v. CNG Transm. Corp.*, 332 F.Supp.2d 759, 786 (W.D.Pa.2004).

{¶18} Accordingly, the Lease is not a perpetual lease that is void as against public policy pursuant to *Claugus*. Rather, the Lease has a primary term of a definite duration of five years—which allows for the payment of delay rental payments only during the primary term—followed by a secondary term that extends the lease if certain conditions are met. Thus, Oxford Oil's first, second, fourth, fifth, and seventh assignments of error are meritorious.

{¶19} Finally, Oxford Oil attacks the trial court's conclusion that, as a general matter, perpetual oil and gas leases are void ab initio. The Ohio Supreme Court clarified that "long-term leases of mineral rights under which there is no development of the land are void as against public policy." *Claugus* at ¶ 21, citing *Ionno v. Glen–Gery Corp.*, 2 Ohio St.3d 131, 134, 443 N.E.2d 504 (1983). Ultimately, the Court in *Claugus* concluded the lease was not perpetual. *Id.* at ¶ 24-30. Similarly, the Lease in this case is not perpetual. Accordingly, Oxford Oil's third assignment of error is moot.

### Return of Rentals and Release of Lease

{¶20} In its sixth assignment of error, Appellant asserts:

> The Common Pleas Court erred in ordering the lessors to return delay rental payments and ordering the County Recorder to place on the record an entry that the lease between the parties has been released.

{¶21} As the trial court erred by invalidating the Lease, it follows that it was error to order the Wests to return delay rental payments and to order the County Recorder to place on the record an entry releasing the Lease. Accordingly, Oxford Oil's sixth assignment of error is meritorious.

### Denial of Summary Judgment

{¶22} Finally, it its eighth assignment of error, Oxford Oil asserts:

> The Common Pleas Court erred by denying the motion of plaintiff for summary judgment.

{¶23} The trial court's decision granting the Wests' partial summary judgment

motion and denying Oxford Oil's hinged solely on the determination that the Lease was invalid; i.e., that it was perpetual and void ab initio as against public policy. The trial court did not address the merits of the remainder of either the Wests' counterclaims or Oxford Oil's declaratory judgment claim.

{¶24} "[I]t is well-established that issues raised in summary judgment motions but not considered by the trial court will not be ruled upon by the appellate court." *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. No. 09 CO 36, 2011-Ohio-5472, ¶ 15, citing *Mills–Jennings, Inc. v. Dept. of Liquor Control*, 70 Ohio St.2d 95, 99, 435 N.E.2d 407 (1982); *Ochsmann v. Great American Ins. Co.*, 10th Dist. No. 02AP–1265, 2003-Ohio-4679, ¶ 21.

{¶25} In *Conny Farms*, the trial court's ruling was based upon a legal issue: that a judicial ascertainment clause in the lease precluded the plaintiffs from bringing suit. *Id.* at ¶ 27–28. The trial court did not review the merits of the plaintiff's underlying claims that the leases had been breached or had expired, despite the fact that the merits were raised in summary judgment proceedings. *Id.* On appeal, we held the judicial ascertainment clause was unenforceable and declined to review the substantive arguments raised by the plaintiff because the trial court had not resolved those issues. *Id. See also Fullum v. Columbiana Cty. Coroner*, 7th Dist. No. 12 CO 51, 2014-Ohio-5512, 25 N.E.3d 463, ¶ 44-46; and *Tree of Life Church v. Agnew*, 7th Dist. No. 12 BE 42, 2014-Ohio-878, ¶ 27-28.

{¶26} Similarly, the merits of the remainder of the Wests' counterclaims were raised via summary judgment but not addressed by the trial court; its ruling was based solely upon the counterclaim that a perpetual lease is void.

{¶27} Thus, Oxford Oil's eighth assignment of error is meritorious in part. The trial court should have granted summary judgment in favor of Oxford Oil on the Wests' counterclaim attacking the Lease as perpetual and void. The matter is remanded for the trial court to consider the remainder of Oxford Oil's claims and the Wests' counterclaims, in a manner consistent with this court's opinion and with *Claugus*.

**Equitable Tolling**

{¶28} While this case was stayed pending the Supreme Court's decision in *Claugus*, Oxford Oil filed a motion to toll the terms of the Lease during the pendency of the appeal process. Oxford Oil requested we toll the primary term of the Lease from the time the Wests refused to allow Oxford Oil access to the subject property through the pendency of these proceedings and all other appellate proceedings.

{¶29} The Wests failed to oppose this motion. Moreover, the trial court stayed its judgment pending this appeal.

{¶30} Following the *Claugus* decision, Oxford Oil supplemented its request for equitable tolling in reliance on the Ohio Supreme Court validating the remedy in that case, reasoning that because the Wests have blocked Oxford Oil from developing its bargained-for development rights, in order to preserve these rights, it is necessary to toll the primary term of the Lease.

{¶31} Civ.R. 62(D) provides:

The provisions in this rule do not limit any power of an appellate court or of a judge or justice thereof to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered.

{¶32} App.R. 7(A) further provides for application of "an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal * * * made to the court of appeals or to a judge thereof * * *." While a stay must ordinarily be sought in the first instance in the trial court, App.R. 7(A) imposes no such obligation for requesting injunctive relief. Rather the rule expressly notes that a stay must ordinarily be sought in the first instance in the trial court "except in cases of injunction pending appeal * * *[,]" which is the situation presented herein.

{¶33} Courts have concluded that "where plaintiff has placed a cloud on the title of a leasehold by seeking judicial cancellation of the lease, a court may, in fairness to the lessee, toll the running of the lease terms." *Jicarilla Apache Tribe v.*

*Andrus*, 687 F.2d 1324, 1341 (10th Cir.1982). *See also H & G Fossil Fuels Co., v. Roach*, 103 N.M. 793, 795–797, 715 P.2d 66 (1986) (reversing lower court's refusal to toll lease).

**{¶34}** In *Claugus*, the Ohio Supreme Court also considered the propriety of an equitable tolling order entered to maintain the status quo during the pendency of an appeal. In *Claugus*, the landowners prevailed in the trial court challenging the validity of the lease, and on appeal this court, pursuant to a motion filed under Civ.R. 62(D) and App.R. 7(A), equitably tolled the lease terms during the pendency of the appeal process. The Supreme Court denied writs of mandamus and prohibition challenging the validity of our equitable tolling order; thus concluding this court had jurisdiction to enter the tolling order. *Claugus* at ¶ 34–40.

**{¶35}** Pursuant to *Claugus,* we grant Oxford Oil's motion for equitable tolling. It is reasonable and equitable to toll the primary term of the Lease beginning at the point the Wests refused to permit access to the property, August 8, 2011. *See Feisley Farms Family, L.P. v. Hess Ohio Resources*, No. 2:14-cv-146, 2015 WL 5793936 at *7 (S.D.Ohio Sept. 30, 2015) (tolling the primary term of the lease from the date that the lessee received a letter from the lessor's attorney stating that the lease was "forfeited"). This court's tolling order will continue through a timely notice of appeal to the Ohio Supreme Court, until that Court accepts or declines jurisdiction. *See, e.g., Hupp, supra,* at ¶ 26 (drawing similar parameters to the equitable tolling order); and *Claugus* at ¶ 34–40 (denying writs challenging order).

### Conclusion

**{¶36}** The Lease is not perpetual; rather, it has a primary term of a definite duration of five years—which allows for the payment of delay rental payments only during the primary term—followed by a secondary term that extends the Lease if certain conditions are met. Accordingly, Oxford Oil's first, second, fourth, fifth and seventh assignments of error are meritorious, and the judgment of the trial court is reversed and the case remanded for partial summary judgment to be entered in favor of Oxford Oil on the Wests' perpetual lease counterclaim. This renders Oxford Oil's third assignment of error moot.

**{¶37}** It follows that it was error to order the Wests to return delay rental payments and to order the County Recorder to place on the record an entry releasing the parties' Lease.  Accordingly, Oxford Oil's sixth assignment of error is meritorious, and the judgment of the trial court is reversed.

**{¶38}** As the decision granting the Wests' partial summary judgment motion and denying Oxford Oil's hinged solely on the determination that the Lease was invalid, the trial court did not address the merits of the remainder of either the Wests' counterclaims or Oxford Oil's declaratory judgment claim.  Accordingly, Oxford Oil's eighth assignment of error is meritorious in part, thus these remaining claims are remanded to the trial court to be adjudicated as applicable.   Finally, Oxford Oil's motion for equitable tolling is granted, retroactively to August 8, 2011, and continuing until a timely notice of appeal is filed with the Ohio Supreme Court, and continuing thereafter until that Court accepts or declines jurisdiction.

Donofrio, P. J., concurs.

Robb, J., concurs.